RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

MEGAN ANDERSON, ISB #10094
GADER WREN, ISB #12108
Deputy Attorneys General
Office of the Attorney General
P.O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
gader.wren@ag.idaho.gov

*Attorneys for Defendant Debbie Critchfield*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHRIS and NICOLE TRAKEL, on their own behalf and on behalf of their minor children, A.T. and D.T., <br><br> *Plaintiffs*, <br><br> v. <br><br> DEBBIE CRITCHFIELD, in her official capacity as Superintendent of Public Instruction; IDAHO HOME LEARNING ACADEMY, an Idaho public charter school, <br><br> *Defendants*. | Case No. 1:25-cv-00115-BLW <br><br> **MEMORANDUM IN SUPPORT OF SUPERINTENDENT CRITCHFIELD'S MOTION TO DISMISS UNDER RULE 12(b)(1) AND 12(b)(6)** |

## INTRODUCTION

The First Amendment leaves ample room for the government to speak without burdening its citizens' Free Speech rights. School curriculum is a form of government speech. And so public schools get to choose their own curriculum. Similarly, the government may offer a strictly secular education without offending Free Exercise.

Plaintiffs have filed suit against Superintendent Critchfield alleging that Idaho Home Learning Academy's ("IHLA") policy prohibiting reimbursement for religious materials violates their First Amendment rights. Plaintiffs assert that IHLA's policy is required by the State Department of Education (the "Department") and article IX section 5 of the Idaho Constitution ("Idaho's Blaine Amendment"). Plaintiffs are mistaken. The First Amendment does not require public schools to include religious materials in their curriculum. Further, IHLA's policy is not required by the Department and does not implicate Idaho's Blaine Amendment. In fact, neither Superintendent Critchfield nor the Department have a policy that applies to IHLA's decision, and they have not provided guidance to IHLA in this matter. Decl. Critchfield ¶¶ 4, 6.

Plaintiffs also assert that recent Supreme Court caselaw requires public schools to reimburse parents for religious materials. But this is not so. In those referenced cases, the Supreme Court has only held that schools may not be excluded from government benefits programs based on their religious status. Plaintiffs' gripe is not that a school is being excluded from a benefit program, their gripe is that the public charter school they chose does not include religious curriculum as part of the secular public school's curriculum choices.

As recently as 2024, federal courts have concluded that when a school chooses to provide a strictly secular education, First Amendment rights of parents and students are not offended. And in cases when parents allege otherwise, courts have dismissed such claims with prejudice. This Court should dismiss Plaintiffs' Complaint for want of jurisdiction as against the Superintendent, as Plaintiffs lack standing, or dismiss the Complaint for its failure to state a claim.

## BACKGROUND

The Idaho Constitution mandates that the Idaho Legislature establish a uniform and thorough system of free schools. IDAHO CONST. art. IX, § 1. The Idaho State Board of Education (the "Board") assists in achieving this mandate by setting state-wide educational policies, such as setting minimum education standards. IDAHO CONST. art. IX, § 2. The Idaho State Department of Education (the "Department") is a creature of statute and is responsible for implementing the polices established by the Board. I.C. § 33-125. The head of the Department is the Superintendent of Public Instruction, currently, Superintendent Debbie Critchfield. *Id.*

While the Department implements the education policies established by the Board, local school boards govern the operation of individual schools. *See Zeyen v. Bonneville Joint Dist., # 93*, 114 F.4th 1129, 1143 (9th Cir. 2024). Local school boards have plenary authority to supervise and regulate schools within their control. *Id.*; *see also* I.C. § 33-1612(3) (explaining that the Board's ability to adopt state-wide rules is limited and the adoption of such rules cannot unduly "impinge upon the authority of the board of trustees of the school districts"). Apart from establishing state-wide educational policies, such as minimum curriculum

standards, neither the Board nor the Department have a role in the governance of individual schools. For that reason, educational services at one school often differ from another. *Zeyen*, 114 F.4th at 1144.

In 1998, the Idaho Legislature passed the Public Charter Schools Act. Idaho Code Title 33, Chapter 52 (1998). The Public Charter Schools Act was later replaced by the Accelerating Public Charter Schools Act (the "Act"). Idaho Code Title 33 Chapter 52. Both acts, however, had the same legislative aims. The acts were passed in an effort to provide greater education options and opportunities for parents and students. I.C. § 33-5202 (1998); I.C. § 33-5202. Under the acts, local school boards may permit private entities to operate a charter school to provide educational services. I.C. § 33-5205 (1998); I.C. § 33-5203. And charter schools operate as independent non-profit corporations governed by a board of directors and its charter. I.C. § 33-5202, 33-5204(1) (1998); I.C. § 33-5202, 33-5204(1). As with all other public schools, charter schools are free to create their own day-to-day procedures or policy decisions but are required to comply with the minimum education curriculum standards mandated by the Board. I.C. § 33-119.[1]

IHLA obtained its charter through the Oneida School District. Decl. Critchfield Ex. 1. And like all other public charter schools, the Department exercises minimal direct control over IHLA. Decl. Critchfield ¶ 3.

Parents with children attending IHLA may submit receipts for reimbursement of educational materials. Dkt. 1 ¶ 7. According to Plaintiffs, IHLA denied their request for

---

[1] Although the Public Charter School Commission may approve charters, IHLA's charter was approved by the Oneida School Board. Decl. Critchfield ¶ 3. Accordingly, the Public Charter School commission for purposes of the relevant time period had no authority over IHLA.

reimbursement based on the religious nature of the curriculum Plaintiffs selected. *Id.* at ¶ 28. Plaintiffs also claim that IHLA's reimbursement policy is based on policy implemented by the Department and Idaho's Blaine Amendment. *Id.* at ¶¶ 9 & 33. But the Department has no such policy and never advised IHLA on this issue. Decl. Critchfield ¶¶ 4–6. Further, Plaintiffs admit that they never spoke to the Department about such a policy. Dkt. 1 ¶ 34.

Plaintiffs, as parents and students of IHLA, have filed this § 1983 case against Superintendent Critchfield in her official capacity as Superintendent of Public Instruction alleging that IHLA's reimbursement policy violates their Free Exercise and Free Speech rights. *See generally* Dkt. 1. But because the Department has not directed IHLA to implement the challenged reimbursement policy, Plaintiffs' alleged injuries are not traceable to Superintendent Critchfield's conduct. Decl. Critchfield ¶ 6. For that reason, Plaintiffs lack standing to sue Superintendent Critchfield. Accordingly, this Court should dismiss Plaintiffs' complaint as to Superintendent Critchfield.

## LEGAL STANDARD

Under Rule 12(b)(1), Courts must dismiss cases over which they have no jurisdiction. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008). When a plaintiff lacks standing, the court lacks jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–04 (1998). On a 12(b)(1) motion, courts may properly consider "any evidence, such as affidavits and testimony" outside the complaint. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988). This is known as a factual attack. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

A Rule 12(b)(6) motion challenges the sufficiency of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), a court may dismiss a complaint "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Cap. Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). In deciding a motion to dismiss the court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) Dismissal with prejudice is appropriate when "further amendment would be futile." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).

**ARGUMENT**

### I.  Plaintiffs Lack Standing to Sue Defendant Critchfield Because She Does Not Have Authority to Control IHLA's Reimbursement Policies.

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Supreme Court "cases have established that the irreducible constitutional minimum of standing consists of three elements." *Id.* (cleaned up). To establish standing, a party "must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024).

## A. Plaintiffs' Alleged Injuries are not Traceable to Superintendent Critchfield's Conduct.

Plaintiffs' alleged injury is in no way traceable to Superintendent Critchfield's conduct. Traceability requires a plaintiff to show his injury is causally linked to a defendant's alleged misconduct. *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1141 (9th Cir. 2013).

Plaintiffs have not shown, nor could they, that their alleged injuries are fairly traceable to Superintendent Critchfield's conduct. Rather, Plaintiffs have merely asserted that IHLA said its reimbursement policy is predicated on a Department policy. Dkt. 1 ¶ 9. But the Department has no such policy. Decl. Critchfield ¶ 4. Furthermore, neither the Department nor Superintendent Critchfield have ever advised IHLA in this matter about its reimbursement policy or about the applicability of Idaho's Blaine Amendment. Decl. Critchfield ¶ 6. Superintendent Critchfield is the head of the Department. Decl. Critchfield ¶ 2. As the Department has no involvement in the establishment of IHLA's reimbursement policy—or its application to the Plaintiffs—the alleged injuries are not traceable to Superintendent Critchfield's conduct. And for that reason, Plaintiffs lack standing to sue Superintendent Critchfield.

## B. A Judgment Against Superintendent Critchfield Would Not Redress Plaintiffs' Alleged Injuries.

Plaintiffs also cannot establish redressability; no judgment against Superintendent Critchfield would cure Plaintiffs' alleged injuries. "To establish redressability, a plaintiff must show that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). In other words, a plaintiff must "show a substantial

likelihood that the relief sought would redress the injury." *Id.* (quoting *Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010) (cleaned up)). If "a favorable judicial decision would not require the defendant to redress the plaintiff's claimed injury, the plaintiff cannot demonstrate redressability." *Id.*

Here, Plaintiffs seek a declaratory judgment against Superintendent Critchfield and IHLA that Idaho's Blaine Amendment is facially unconstitutional and as applied to the Plaintiffs violates Free Exercise and Free Speech. Dkt. 1 at 8. Plaintiffs also seek a preliminary and permanent injunction against Superintendent Critchfield enjoining the Department and IHLA from excluding Plaintiffs from using public funding to reimburse the cost of their religious curriculum selection. *Id.* at 9. Assuming this Court granted these forms of relief, as applied to Superintendent Critchfield, Plaintiffs' injuries would not be redressed. This is because Superintendent Critchfield does not have authority to impose state-wide reimbursement policies. Decl. Critchfield ¶ 5.

Given that Plaintiffs have not demonstrated that their alleged injury is traceable to Superintendent Critchfield, and that a favorable judgment against Superintendent Critchfield would redress their alleged injuries, this Court should dismiss Plaintiffs' claims against Superintendent Critchfield with prejudice.

## II. Plaintiffs Have Not Stated a Claim Upon Which Relief May Be Granted Because IHLA's Policy Does Not Implicate First Amendment Protections.

IHLA's reimbursement policy is consistent with Ninth Circuit caselaw and the recognized understanding of the First Amendment. Plaintiffs argue that IHLA's reimbursement policy violates their Free Speech and Free Exercise rights. But this is not so.

### A. Claim II Fails Because Plaintiffs Do Not Have a Free Speech Right to Select Public School Curriculum.

Plaintiffs possess no Free Speech rights to select public school materials. It has long been recognized that the First Amendment's Free Speech Clause prohibits governmental abridgment of speech. *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019). But the Free Speech Clause does not regulate government speech. *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467 (2009). Put differently, when the government or its officials are "engaging in their own expressive conduct . . . the Free Speech Clause has no application." *Id.* When the government selects or approves school curriculum, it is engaging in expressive conduct implicating the government speech doctrine. *See Downs v. Los Angeles Unified Sch. Dist.*, 228 F.3d 1003, 1015 (9th Cir. 2000) (explaining that curriculum is an outlet of a school's expression).

In *Nampa Classical Acad. v. Goesling*, a student and parent, along with other plaintiffs, filed a § 1983 claim against the Idaho Public Charter School Commission arguing that its policy prohibiting the use of religious materials violated Free Speech. 714 F. Supp. 2d 1079, 1084 (D. Idaho 2010) (Lodge, J.) aff'd, 447 F. App'x 776 (9th Cir. 2011). On a motion to dismiss, the district court found that under binding Ninth Circuit precedent, "[s]tudents and teachers do not have a 'First Amendment right to influence curriculum as they so choose.'" *Id.* at 1093 (quoting *Downs*, 228 F.3d at 1015–16). Specifically, with respect to Free Speech, this is because "[t]he curriculum taught in public schools is government speech; meaning 'First Amendment rights have been limited.'" *Id.* (quoting *Downs*, 228 F.3d at 1015–16). This analysis is not different for public charter schools because charter schools are public schools funded by the

State. *See id.* For that reason, the district court dismissed plaintiffs' Free Speech claim with prejudice. *Id.* at 1098.

Federal courts have continued to conclude that parents have no Free Speech right to influence public school curriculum. In *Woolard v. Thurmond*, a public charter school had a policy requiring that "all curriculum . . . be nonsectarian." No. 2:23-CV-02305-JAM-JDP, 2024 WL 3010899, at *4 (E.D. Cal. June 10, 2024). A group of parents sued the California Superintendent of Public Instruction asserting that public charter school polices disallowing parents from selecting religious materials violated their Free Speech rights. The court rejected this claim.

The court explained that because the curriculum was provided by a public charter school, the curriculum was a form of government speech, not speech of the parents or students. *Id.* *5 (citing *Summum*, 555 U.S. at 467). The court further noted that the Ninth Circuit has long held that parents do not have a Free Speech right to select public school curriculum. *Id.*; *Downs*, 228 F.3d at 1015 ("[C]urriculum is only one outlet of a school district's expression of its policy."); *Nampa Classical Acad. v. Goesling*, 447 F. App'x 776, 778 (9th Cir. 2011), and cert. denied, 566 U.S. 905 (2012) (unpublished) (The Ninth Circuit held that because charter schools are government entities, the curriculum is the government's speech, not the teachers, parents, or students). Thus, the court concluded that the parents' Free Speech claim failed and dismissed it with prejudice. *Id.* at *5–6.

In the instant case, the IHLA Handbook makes it clear that the curriculum choices belong to the school, not to the parents. That Handbook states that its "policy requires that students are provided with Board approved curriculum aligned to Idaho Content Standards."

Critchfield Dec., Ex. 1 at 11.[2]  Further, "IHLA offers students a variety of curriculum choices, all of which have been approved by the District."  *Id.* at 14.  The IHLA chooses the curriculum to use for its students using a variety of factors in order to "allow access to a free and appropriate education for all students" and to "ensure the alignment to the State Core Standards and to optimize learning outcomes."  *Id.* at 11.  While parents can request that they be reimbursed for "supplemental, enrichment, and support materials," teachers must first approve the materials to be used as part of the curriculum after determining whether the materials "support the core schedule [the] child is currently taking and assist the child in becoming more successful."  *Id.* at 11.  The teacher must then "determine if [it] is a reasonable request and an efficient use of tax dollars."  *Id.*  Only after those questions are answered in the affirmative may the parent follow the approved acquisition process. *Id.*  Additionally, "[a]ll curriculums are overseen by an Idaho-certified teacher."  *Id.* at 13.

Thus, the IHLA Handbook makes it abundantly clear that all materials provided by the school as part of its curriculum, whether those materials are provided through the school's preapproval process or through an approval process for materials that have not been preapproved, must meet specific criteria by the school in order for that material to be used as part of the IHLA's public school curriculum.  Just as in the *Woolard* case, the IHLA does not "allow[] parents or guardians to be the unilateral decision maker of a student's curriculum,"

---

[2] The Plaintiffs reference the IHLA Handbook in paragraph 24 of their Complaint. "When ruling on a Rule 12(b)(6) motion to dismiss" a "court may … consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

rendering the curriculum choices "a form of government speech, not speech of a teacher, parent, or student." *Woolard*, 2024 WL 3010899 at *4-5.

Here, Plaintiffs have no Free Speech rights to force public schools to provide religious materials as part of their children's education. Like the parents in *Goesling* and *Woolard*, Plaintiffs assert that public school provided materials constitute parental speech. But this is not so. As discussed above, the only materials provided by the IHLA, which materials are purchased with public dollars, are materials to be used as part of the curriculum approved by IHLA for use in its public school, making it government speech, not parental speech. Like the courts in *Goesling* and *Woolard*, this Court should find that such materials are indeed government speech and should dismiss Plaintiffs' Free Speech claim with prejudice.

### B. Claim I Fails Because the Free Exercise Clause Does Not Confer a Parental Right to Require Public Schools to Provide Religious School Materials.

Parents have no Free Exercise based right to select their children's publicly paid for schooling materials. The Religion Clauses of the First Amendment provide: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. These two Clauses, the Establishment Clause and the Free Exercise Clause, are frequently in tension. *Locke v. Davey*, 540 U.S. 712, 718 (2004). The Supreme Court has long held that "there is room for play in the joints" between the two clauses. *Walz v. Tax Comm'n of City of New York,* 397 U.S. 664, 669 (1970). "In other words, there are some state actions permitted by the Establishment Clause but not required by the Free Exercise Clause." *Locke*, 540 U.S. at 718–19.

Under the Establishment Clause, the government is, in some circumstances, permitted to provide funding to religious schools. *Zelman v. Simmons–Harris*, 536 U.S. 639, 652 (2002).

However, the Establishment Clause does not require the government to provide funding for the study of religion. *See generally Locke*, 540 U.S. at 712.

Parents have no Free Exercise-based right to require public schools to provide religious curriculum. In *Goesling*, the parents argued a public charter school's prohibition on the use of religious materials violated their Free Exercise right. 714 F. Supp. 2d at 1086. The district court noted that while the Free Exercise Clause affords parents "the right to believe and profess whatever religious doctrine they choose," it does not provide them the right to influence public school curriculum choices. *Id.* at 1092.

New Supreme Court caselaw does not undermine *Goesling*. Recently, the Supreme Court has held that the Free Exercise Clause prohibits the government from excluding entities from public benefits programs based on religious status alone. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017), *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464 (2020), and *Carson v. Makin*, 596 U.S. 767 (2022). For example, the government cannot exclude a religious school from participating in a state-sponsored grant program simply because the school is religious, *Trinity Lutheran*, 582 U.S. at 467, nor may the government exclude religious schools from tax deduction programs, *Espinoza*, 591 U.S. at 483, or school voucher programs, *Makin*, 596 U.S. at 808. Nevertheless, the Court has made clear that notwithstanding Free Exercise demands, states are free to "provide a strictly secular education in its public schools." *Makin*, 596 U.S. at 785.

In *Woolard*, the parents argued that the public charter school's strictly nonsectarian policy violated their Free Exercise rights. 2024 WL 3010899, at *1. Specifically, the parents argued that under *Trinity Lutheran*, *Espinoza*, and *Makin*, the policy was unconstitutional. *Id.* at

*5. The court rejected this argument and found that those cases were inapplicable because they "concern[ed] state programs in which a state was offering public benefits" and denied schools that benefit "only because of the schools' religious nature." *Id.* Because no school or person was denied a public benefit based solely on religious status, the court found that the parents' argument failed and dismissed their Free Exercise claim with prejudice. *Id.* at *5–6.

Here, Plaintiffs' Free Exercise claims fail for the same reasons as the parents in *Woolard*. Similar to the charter school policy in *Woolard*, IHLA's policy requires approval from IHLA for all curriculum, and prohibits reimbursement for religious materials. While Free Exercise Clause prohibits schools from excluding persons or entities from public benefits programs, it nevertheless permits states to provide a strictly secular education. IHLA's reimbursement policy is the only one of its kind in the state of Idaho and the school has elected to provide a strictly secular education without excluding persons or entities from public benefits programs. This complies with constitutional demands. Accordingly, the Court should dismiss Plaintiffs' Free Exercise claims with prejudice.[3]

**CONCLUSION**

For the foregoing reasons, the Court should grant Defendant's motion to dismiss.

---

[3] Plaintiffs assert that this case implicates Article IX Section 5 of the Idaho Constitution. But the Court need not address this issue because Plaintiffs have not demonstrated standing. And even if Plaintiffs could show standing, because Ninth Circuit caselaw makes it clear that IHLA's policy does not violate either the Free Exercise Clause or the Free Speech clauses of the Frist Amendment, there is no need to address the constitutionality of article IX, section 5 of the Idaho Constitution.

DATED: May 12, 2025

         STATE OF IDAHO
         OFFICE OF THE ATTORNEY GENERAL


         */s/ Megan Anderson*
         MEGAN ANDERSON
         Deputy Attorney General

         *Attorney for Defendant Debbie Critchfield*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on May 12, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which caused the following parties to be notified:

Katherine I. Hartley
khartley@pji.org

*Attorney for Plaintiffs*

/s/ *Megan Anderson*
MEGAN ANDERSON