Katherine Hartley (Bar No. 11837)
PACIFIC JUSTICE INSTITUTE
P.O. Box 2131
Coeur d'Alene, ID 83816
khartley@pji.org

*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHRIS AND NICOLE TRAKEL, on their own behalf and on behalf of their minor children, A.T. and D.T., | Case No. 1:25-cv-00115-BLW |
| Plaintiffs, | **PLAINTIFFS CHRIS AND NICOLE TRAKEL'S OPPOSITION TO DEFENDANT DEBBIE CRITCHFIELD'S MOTION TO DISMISS** |
| v. | |
| DEBBIE CRITCHFIELD, in her official capacity as Superintendent of Public Instruction; IDAHO HOME LEARNING ACADEMY, an Idaho public charter school, | |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.............................................................. ii

I.    INTRODUCTION ...............................................................1

II.   FACTS .............................................................................1

III.  LEGAL STANDING .........................................................2

IV.   ARGUMENT ....................................................................4

    A. Plaintiffs have standing because Defendant Critchfield is responsible for Idaho education law and policy, including charter schools ........................................................4

    B. Plaintiffs pled a viable Free Exercise Claim.............................6

    C. Plaintiffs pled a viable Free Speech Claim...............................10

    D. Amendment is unnecessary but would not be futile................13

V.    CONCLUSION.................................................................14

i

# TABLE OF AUTHORITIES

**CASES**

*303 Creative LLC v. Elenis,*
 600 U.S. 570 (2023) ...............................................................10

*Bain v. Cal. Teachers Ass'n,*
 891 F.3d 1206 (9th Cir. 2018) ..............................................3

*Carson ex rel. O.C. v. Makin,*
 596 U.S. 767 (2022) ................................................ *passim*

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
 508 U.S. 520 (1993) ........................................................8, 9, 10

*Coalition to Defend Affirmative Action v. Brown,*
 674 F. 3d 1128 (9th Cir. 2012) ...........................................5, 6

*Conley v. Gibson,*
 355 U.S. 41 (1957) ..............................................................3

*Downs v. Los Angeles Unified Sch. Dist.,*
 228 F. 3d 1003 (9th Cir. 2000)............................................12

*Espinoza v. Montana Dep't of Revenue,*
 591 U.S. 464 (2020) ....................................................7, 9, 10

*Friends of the Earth, Inc., v. Laidlaw Ent'l Serv., Inc.,*
 528 U.S. 167 (2000) ............................................................3

*Kennedy v. Bremerton Sch. Dist.,*
 597 U.S. 507 (2022) ..........................................................13

*Los Angeles County Bar Ass'n v. March Fong Eu,*
 979 F. 2d 697 (9th Cir. 1992)............................................6

*Lujan v. Defenders of Wildlife,*
 504 U.S. 555 (1992) ...........................................................4

ii

*Matal v. Tam,*
    582 U.S. 218 (2017) ................................................................11

*Nampa Classical Acad. v. Goesling,*
    714 F. Supp. 2d 1079 (D. Idaho 2010)..............................8, 12

*Rosen v. Walters*,
    719 F.2d 1422 (9th Cir. 1983) ...............................................3

*Rosenberger v. Rector & Visitors of Univ. of Virginia,*
    515 U.S. 819 (1995) ..............................................................13

*Shurtleff v. City of Boston,*
    596 U.S. 243 (2022) ..............................................................11

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
    582 U.S. 449 (2017) ..........................................................9, 10

*Wilson v. Hewlett-Packard Co.,*
    668 F. 3d 1136 (9th Cir. 2012)...............................................3

*Woolard v. Thurmond*,
    No. 2:23-cv-02305, 2024 WL 3010899 (E.D. Cal. June 7, 2024) .............9

*Zelman v. Simmons-Harris,*
    536 U.S. 639 (2002) ........................................................12, 13

**CONSTITUTIONS AND STATUTES**

U.S. Const. amend. I.................................................................1, 6

U.S. Const. art. III ..................................................................3, 6

Fed. R. Civ. Proc. Rule 12(b)(6) ..........................................2, 4, 10

Idaho Code § 33-125 ................................................................4, 5

Idaho Const. article IX, § 5 (Blaine Amendment) .................2, 10

iii

## I.    INTRODUCTION

This case is about a homeschooling family who was denied an otherwise available benefit through their public charter school because of their faith and their faith-based choices. Public educational officials discriminated against them based on content and viewpoint, in violation of the Free Speech Clause of the First Amendment, and on the basis of their religious status in violation of the First Amendment's Free Exercise Clause. In her pending Motion to Dismiss, Defendant Debbie Critchfield (Superintendent or Supt. Critchfield) relies primarily on her own version of alternative facts and on non-binding decisions. Her motion to dismiss should be denied because she cannot create, at this early stage of the litigation, her own facts. Nor can she prevail by avoiding the U.S. Supreme Court's jurisprudence of the last twenty-five years, under which discrimination against parents making faith-based choices in public education is no longer permissible as it may have been in decades past.

## II.    FACTS

The pertinent facts to be taken as true for purposes of this motion are as follows: Plaintiffs are parents of students who are enrolled at Idaho Home Learning Academy (IHLA), an Idaho public charter school. IHLA provides support to parents and the opportunity to choose non-classroom-based curriculum

OPPOSITION TO MOTION TO DISMISS - 1

that can be customized for their children. Compl. at ¶¶ 3-5. Importantly, parents are permitted to make individual decisions about the specific curriculum for their students, as long as certain state educational standards are met. *Id.* at ¶ 7.

Plaintiffs are Christians who seek to instill their faith in their children and educate them through curriculum that reflect this worldview. When they identified curriculum that both met state educational standards and incorporated their faith-based views, they were denied reimbursement. *Id.* at ¶¶ 27-28. As alleged in the Complaint, IHLA denied reimbursement that it would have otherwise offered for a secular curriculum because they have received guidance from the state department of education to do so. *Id.* at ¶ 32. The charter school also invoked the Idaho State Blaine Amendment in their reasoning, which prohibits the use of public money for the support of a sectarian school. *Id.* at ¶ 33.

Supt. Critchfield is the State Superintendent of Public Instruction and is tasked with leading the Department of Education. *Id.* at ¶ 14. IHLA has attributed its discriminatory policy to Idaho Department of Education requirements.

## III.    LEGAL STANDARD

A motion under Rule 12(b)(6) should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief, construing the complaint in the light most favorable to

OPPOSITION TO MOTION TO DISMISS - 2

the plaintiff." *Bain v. Cal. Teachers Ass'n*, 891 F.3d 1206 (9th Cir. 2018) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

A complaint need not state detailed factual allegations, but must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Wilson v. Hewlett-Packard Co.,* 668 F. 3d 1136, 1140 (9th Cir. 2012). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

To satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc., v. Laidlaw Ent'l Serv., Inc.,* 528 U.S. 167, 180-81 (2000).

The Court must treat all well-pleaded facts as true and view them in the light most favorable to the Plaintiffs at this stage of the proceedings. *Rosen v. Walters*, 719 F.2d 1422, 1424 (9th Cir. 1983). For Article III standing, what must be pled at

OPPOSITION TO MOTION TO DISMISS - 3

the outset is less than what must ultimately be proved for trial or summary

judgment. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992).

## IV.    ARGUMENT

### A. Plaintiffs have standing because Defendant Critchfield is responsible for Idaho education law and policy, including charter schools.

As a preliminary matter, Supt. Critchfield cannot prevail on a motion to

dismiss by simply offering an alternative set of facts via a declaration to those

offered by the Plaintiffs in their Complaint. This is the opposite of taking the

Plaintiffs' alleged facts as true. Even if Supt. Critchfield's assertions are true and

reasonable, those assertions raise a question of fact that is not appropriately

resolved under a Rule 12(b)(6) motion.

Supt. Critchfield is the Idaho Superintendent of Public Instruction, and the

leader of the Idaho Board of Education. The Superintendent "shall have the

responsibility for carrying out policies, procedures and duties authorized by law or

established by the state board of education for all elementary and secondary school

matters." Idaho Code § 33-125. When questioned to justify the policy to deny the

Plaintiffs financial assistance for their purchase of religiously based homeschool

curriculum, IHLA stated that it is the policy of the Department of Education to not

reimburse families for faith-based curriculum in the same manner as secular

curriculum. Despite this fact, Supt. Critchfield claims to not be connected to this

OPPOSITION TO MOTION TO DISMISS - 4

case and seeks a motion to dismiss for lack of standing and that Plaintiffs have failed to state free exercise or free speech claims. Both of these contentions are flawed.

As alleged in the Complaint, IHLA repeatedly told Plaintiffs that the reason for the denial of reimbursement for religious curriculum was due to the Department of Education's policy and guidance. Compl. at ¶ 32. Supt. Critchfield attempts to claim that she has no authority to impose state-wide reimbursement policies, and that charter schools like IHLA create these policies for themselves, but IHLA claims their policy came from Supt. Critchfield's department. Supt. Critchfield's statutory responsibility is to act as the head of the Department of Education, which implements education policy. Idaho Code § 33-125. The Department of Education's own organizational chart places Supt. Critchfield at the top, over the areas of policy, content, and curriculum and school choice.[1] This makes the Plaintiffs' injury regarding a discriminatory policy coming from the Department of Education traceable to Supt. Critchfield, and a favorable judgment against her would redress those injuries.

The Ninth Circuit has rejected similar claims of lack of traceability that Supt. Critchfield argues. In *Coalition to Defend Affirmative Action v. Brown*, the

---

[1] See, https://www.sde.idaho.gov/_files/SDE-Org-Chart.pdf.

OPPOSITION TO MOTION TO DISMISS - 5

head of the University of California was found to have sufficient connection to the

Plaintiff's constitutional allegations about the University of California admissions

policies. *Coalition to Defend Affirmative Action v. Brown,* 674 F. 3d 1128, 1134

(9th Cir. 2012). As with the University of California head, the "buck stops" with

Supt. Critchfield when addressing a Department of Education policy. *Id.* at 1135.

If Plaintiffs were to obtain a favorable ruling, it must be assumed that the

Department of Education would have to abide by the Court's authoritative

determination. *See*, *Los Angeles County Bar Ass'n v. March Fong Eu*, 979 F. 2d

697, 701 (9th Cir. 1992) (ruling the California State Bar Association had Article III

standing to sue a state official with connection to a challenged state law).

**B. Plaintiffs pled a viable Free Exercise Claim.**

Supt. Critchfield's constitutional arguments also fail because Plaintiffs have

pleaded valid Free Exercise and Free Speech claims. The discriminatory policies

indeed implicate First Amendment protections because those policies deny a

generally available benefit on the basis of religion. When the government decides

to exclude religious observers from otherwise available public benefits, the free

exercise clause is violated. *Carson ex rel. O.C. v. Makin*, 596 U.S. 767, 778

(2022). However, Supt. Critchfield attempts to mischaracterize the situation by

claiming that Plaintiffs do not have a right to select their children's publicly paid-

OPPOSITION TO MOTION TO DISMISS - 6

for schooling materials. Mot. at 11. In truth, the government need not subsidize independent study or homeschool education. But if it decides to do so, it cannot disqualify curriculum because it is religious. *See*, *Espinoza v. Montana Dep't of Revenue*, 591 U.S. 464, 487 (2020) (ruling that the state cannot forbid parents from choosing to use an otherwise available public benefit to send their children to religious schools). The situation the Plaintiffs in this case find themselves in is substantially similar to the parents in *Espinoza*. Defendant IHLA offers reimbursement for parent-chosen and parent-directed curriculum that will be taught to their children, with minimal oversight from IHLA. Compl. ¶¶ 23-25. Once this offering is made, IHLA cannot discriminate against parents who choose a religious curriculum, just as the state of Montana could not discriminate against parents who chose to send their children to private religious schools in *Espinoza*.

Supt. Critchfield also fails to address the fact that because the Defendants in this case disqualify otherwise available families from receiving a homeschool funding benefit based on the religious content of the curriculum, the Court must apply strict scrutiny. *Espinoza*, 591 U.S. at 484. This type of benefit denied to the Plaintiffs is not distinguishable from the publicly funded parental choice programs in *Carson* and *Espinoza*, and Supt. Critchfield does not attempt to explain how denying religious curriculum reimbursement chosen by the parents is narrowly

OPPOSITION TO MOTION TO DISMISS - 7

tailored to advance an interest of the highest order. *See*, *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 546 (1993) (ruling that a law that targets religious conduct for distinctive treatment will survive strict scrutiny only in rare cases).

Supt. Critchfield further argues that parents are not afforded the right to influence public school curriculum choices, and that *Nampa Classical Acad. v. Goesling*, 714 F. Supp. 2d 1079 (D. Idaho 2010), is controlling in this case. Mot. at 12. The argument alleges that the State and IHLA are permitted to provide a strictly secular education. However, the U.S. Supreme Court rejected this argument in *Carson*, which was notably decided over a decade after the district court's decision in *Goesling*. In *Carson*, the state of Maine argued that any funding offered to parents must be the "rough equivalent of the public education that Maine may permissibly require to be secular." *Carson*, 596 U.S. at 782. This argument was rejected because Maine's program acted as a subsidy or benefit for private education, despite how Maine attempted to recharacterize it. The Court warned that the "presence or absence of magic words" can never be the basis for our fundamental free exercise protections. *Id.* at 785. Similarly, IHLA's program offers parents the option to choose curriculum for independent study, unless that curriculum contains religious references. Supt. Critchfield's argument that parents

OPPOSITION TO MOTION TO DISMISS - 8

are simply not allowed to influence public school curriculum in this situation is the re-wording of a program that the Supreme Court squarely rejected. A brick and mortar public school cannot be conflated with IHLA's independent study program, and taking such a position is reminiscent of the positions advanced but rejected by the Supreme Court in *Carson* and *Espinoza*.

Supt. Critchfield also attempts to argue that the Supreme Court precedent reflected in *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017), *Espinoza*, and *Carson* only applies where the government discriminates on religious status alone. Mot. at 12. These cases are not about religious status alone, and they lead directly to the relief that Plaintiffs seek in this case.

Supt. Critchfield asks the Court to rely on the recent ruling in *Woolard v. Thurmond*, No. 2:23-cv-02305, 2024 WL 3010899 (E.D. Cal. June 7, 2024), which dismissed a case similar to Plaintiffs.[2] Mot. at 13. The Court in *Woolard* ruled that *Espinoza* and *Carson* were not applicable because the parents were not denied a public benefit based solely on religious status. This ruling is inconsistent with other well-established free exercise jurisprudence that protects both religious status and religious conduct. *See*, *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508

---

[2] *Woolard* is scheduled to be argued before the Ninth Circuit shortly after the filing of this brief.

OPPOSITION TO MOTION TO DISMISS - 9

U.S. 520, 543 (1993) ("The principle that government, in pursuit of legitimate interests, cannot in a selective manner impose burdens only on conduct motivated by religious belief is essential to the protection of the rights guaranteed by the Free Exercise Clause.")[3] As with the defendants in *Trinity Lutheran*, *Carson*, and *Espinoza*, the Idaho Constitution's Blaine Amendment[4] was invoked by IHLA to justify discriminatory policies, and this needs to be explored through discovery rather than dealt with in the context of a 12(b)(6) motion.

**C. Plaintiffs pled a viable Free Speech Claim.**

Supt. Critchfield argues that Plaintiffs do not have a Free Speech Claim because IHLA is engaging in protected government speech by disallowing religiously based curriculum. Mot. at  8. Specifically, she argues that IHLA's policy requires that students are provided with Board-approved curriculum aligned to Idaho Content Standards, and since parents are not the unilateral decision makers of a student's curriculum, IHLA's curriculum choices are a form of

_____

[3] If Supt. Critchfield's argument were applied to *Lukumi*, the City of Hileah would be allowed to tell the plaintiff church in that case that they can be a church, but are not allowed to perform their desired rituals. Similarly, under Supt. Critchfield's theory, the state of Colorado would be able to say to the plaintiff in *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023), that she can be a Christian artist or professional, but she can't follow her beliefs in her professional life. Fortunately, Free Exercise jurisprudence has squarely rejected such status/conduct distinctions.
[4] See, Article IX, § 5 of the Idaho Constitution.

OPPOSITION TO MOTION TO DISMISS - 10

government speech. Mot. at 10-11. These arguments are inconsistent with the

Plaintiff's pleadings and government speech jurisprudence.

The program offered by IHLA allows parents to teach their children

independently. Therefore, it is the speech of the parents, not the government, when

parents choose a curriculum best suited for their particular child, as the program

touts. Further, the curriculum chosen by the parents is taught by the parents in their

own private homes and exclusively to their own children. This is a far cry from the

speech of a school employee on government school property with a captured

audience of students.

In considering whether speech is government speech, courts "consider

whether the public would tend to view the speech at issue as the government's."

*Shurtleff v. City of Boston*, 596 U.S. 243, 255 (2022). The Supreme Court also

advises to use the government speech doctrine very carefully. *Matal v. Tam,* 582

U.S. 218, 235 (2017) (ruling that the "government speech doctrine is important—

indeed essential—" but "it is a doctrine that is susceptible to dangerous misuse. If

private speech could be passed off as government speech by simply affixing a

government seal of approval, government could silence or muffle the expression of

disfavored viewpoints."). Yet this is exactly what Supt. Critchfield asks the Court

to do. Labeling curriculum that is chosen by parents and taught by parents in their

OPPOSITION TO MOTION TO DISMISS - 11

own home to their own children as government speech is a chilling conclusion, and one this Court should reject.

The cases Supt. Critchfield relies on in her motion are easily distinguishable as they deal with speech by public school employees and curriculum for classroom-based public school instruction. For example, in *Downs v. Los Angeles Unified Sch. Dist.,* 228 F. 3d 1003 (9th Cir. 2000), the Ninth Circuit addressed whether a public school teacher could share a public high school bulletin board to express his own contrary views when the school "speaks to its own constituents on the subject of how students should behave towards each other while at school." *Id.* at 1005. Similarly, Supt. Critchfield relies on *Goesling*, which states that public charter school curriculum taught in a classroom-based public charter school by charter school employees is government speech. *Goesling* at 1093. The speech in these cases is astray from the speech at issue in this case, where parents are speaking to their own children in their own homes.

Supt. Critchfield's theory of government speech in this context is also problematic in light of current Supreme Court jurisprudence. The Supreme Court has held that programs like IHLA's that are designed to provide educational choices to families do not violate the Establishment Clause. *Zelman v. Simmons-Harris*, 536 U.S. 639, 643-44 (2002). *See also*, *Carson*, 596 U.S. at 775;

OPPOSITION TO MOTION TO DISMISS - 12

*Rosenberger v. Rector & Visitors of Univ. of Virginia,* 515 U.S. 819, 839 (1995). If all speech indirectly funded by the government were considered government speech, then *Zelman*, *Carson*, and *Rosenberger* would have an Establishment Clause problem. However, the Supreme Court has clearly ruled there is no Establishment Clause problem because it is not government speech.

Supt. Critchfield's position is difficult if not impossible to square with such precedents requiring neutral subsidies of religious and non-religious speech, even in the context of educational spaces, focused more on who is delivering the speech rather than who is paying for it. Importantly, even public school teachers who are physically on campus are not automatically deemed government speakers. *See, e.g.*, *Kennedy v. Bremerton Sch. Dist.,* 597 U.S. 507 (2022). With this in mind, it is a tenuous argument that parents who are in their own home, presenting material they selected, be regarded as government speakers.

**D. Amendment is unnecessary but would not be futile.**

If the Court sees fit to dismiss the action, Plaintiff should be given leave to amend. While Plaintiffs have plainly stated their case, they are not precluded from elaborating if that determination would make a short and plain statement more palatable at the pleading stage.

OPPOSITION TO MOTION TO DISMISS - 13

## V.    CONCLUSION

The Court should deny Supt. Critchfield's motion to dismiss.

Respectfully submitted this 29th day of May 2025,

/s/Katherine I. Hartley
Katherine I. Hartley
Pacific Justice Institute
P.O. Box 2131
Coeur d'Alene, ID 83816
khartley@pji.org

OPPOSITION TO MOTION TO DISMISS - 14