Raúl R. Labrador
Attorney General

James E. M. Craig, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

Megan Anderson, ISB #10094
Gader Wren, ISB #12108
Deputy Attorneys General
Office of the Attorney General
P.O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
megan.anderson@idaho.gov
gader.wren@ag.idaho.gov

*Attorneys for Defendant Debbie Critchfield*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHRIS and NICOLE TRAKEL, on their own behalf and on behalf of their minor children, A.T. and D.T., <br><br> *Plaintiffs*, <br><br> v. <br><br> DEBBIE CRITCHFIELD, in her official capacity as Superintendent of Public Instruction; IDAHO HOME LEARNING ACADEMY, an Idaho public charter school, <br><br> *Defendants.* | Case No. 1:25-cv-00115-BLW <br><br> **REPLY IN SUPPORT OF DEFENDANT DEBBIE CRITCHFIELD'S MOTION TO DISMISS UNDER RULE 12(b)(1) AND 12(b)(6) [DKT. 7]** |

**INTRODUCTION**

It is well-established that public school curriculum is government speech. And public schools may choose to provide a purely secular curriculum. Plaintiffs assert that because they are homeschooled, the material for which they seek reimbursement is not government speech. But this is not so. Plaintiffs are enrolled in a public charter school. All educational materials provided by IHLA constitute school curriculum, and therefore government speech. Plaintiffs object to this legal reality and against binding precedent ask this Court to declare that parents, not schools, have the right to select public school curriculum. The Court should reject this invitation and dismiss Plaintiffs' claims with prejudice.

Plaintiffs assert that Superintendent Critchfield is a proper party to this case even though their alleged injuries are not traceable to her and any judgment against her would provide them no relief. Superintendent Critchfield has raised a factual attack on the Court's jurisdiction and has provided extrinsic evidence supporting that attack. Plaintiffs have provided no contrary evidence and have failed to meet their burden demonstrating subject matter jurisdiction. Thus, Superintendent Critchfield should be dismissed from the case.

**ARGUMENT**

I. **Plaintiffs Lack Standing.**

   A. **Plaintiffs have failed to meet their burden in response to the Superintendents' factual challenge to the Court's subject matter jurisdiction.**

Plaintiffs fail to appreciate that Superintendent Critchfield has raised a factual attack under Fed. R. Civ. P. 12(b)(1) to the Court's subject matter jurisdiction and thus erroneously argue that Superintendent Critchfield's use of extrinsic evidence, namely her declaration, is improper. Dkt. 11 at 8. A "lack of Article III standing requires dismissal for lack of subject

matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) "A party who brings a Rule 12(b)(1) challenge may do so by referring to the face of the pleadings or by presenting extrinsic evidence." *Shoshone-Bannock Tribes of Fort Hall Rsrv. v. United States*, 575 F. Supp. 3d 1245, 1252 (D. Idaho 2021). "When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs in the summary judgment context." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation omitted). And "[t]he plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Id.* In other words, where a plaintiff fails to provide any evidence, he has failed to meet his burden.

Here, Plaintiffs' failure to provide a declaration or other evidence to rebut Superintendent Critchfield's declaration is fatal to their case. Superintendent Critchfield provided a declaration in support of her Rule 12(b)(1) motion explaining why Plaintiffs' injuries are not traceable to her or the Department of Education's conduct and are not redressable by the requested relief. Dkt. 7-2. Plaintiffs failed to provide sufficient evidence to meet their burden to establish subject matter jurisdiction. Dkt. 11. In fact, Plaintiffs fail to address Superintendent Critchfield's standing argument and instead conflate it with the Superintendent's Rule 12(b)(6) arguments. Although the complaint was verified, the only representation is hearsay and is directly contradicted by non-hearsay from the Superintendent. *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (noting that a district court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction.") (citation

REPLY IN SUPPORT OF DEFENDANT DEBBIE CRITCHFIELD'S
MOTION TO DISMISS UNDER RULE 12(b)(1) AND 12(b)(6) [DKT. 7]—2

omitted). Accordingly, this Court should dismiss Plaintiffs' claims against Superintendent Critchfield for lack of subject matter jurisdiction.

### B. Plaintiffs' injuries are neither traceable to nor redressable by the Superintendent.

Plaintiffs' entire standing argument relies on the allegation that IHLA told Plaintiffs that the denial of reimbursement was based upon "the Department of Education's policy and guidance." Dkt. 11 at 9; Dkt. 1 ¶ 9. But as Superintendent Critchfield's declaration proves, there is no such Department of Education policy, and no such guidance was given by the Department to IHLA. *See* Dkt. 7-2. The Department also does not have the authority to unilaterally enact rules governing such a policy. *Id.* ¶¶ 4–5. Given that no such Department policy exists, and any such policy originates with IHLA, the requested relief against Superintendent Critchfield will not redress the injury. *See M.S. v. Brown*, 902 F. 3d 1076, 1083 (9th Cir. 2018).

Plaintiffs also point to the duties of the Superintendent of Public Instruction outlined in Idaho Code § 33-125 and suggest that because she is the executive officer of the Department of Education, their alleged injury is traceable to her. Dkt. 11 at 9. Again, this ignores the fact that no such policy exists, and no such guidance was given to IHLA. *See* Dkt. 7-2. This argument also ignores that local school districts establish their own policies outside of the basic standards set by the Board of Education and implemented through the Department of Education. *See Zeyen v. Bonneville Joint District*, #93, 114 F.4th 1129, 1143–44 (9th Cir. 2024); *Ybarra v. Legislature by Bedke*, 166 Idaho 902, 912, 466 P.3d 421, 431 (2020); Idaho Code § 33-125. Thus, the Plaintiffs' injury is not traceable to Superintendent Critchfield.

Plaintiffs point to *Coalition to Defend Affirmative Action v. Brown*, 674 F. 3d 1128 (9th Cir. 2012), but that case does not help them. That case involved a challenge to the University of California's practice, following the adoption of a California constitutional amendment, of not considering race or sex in student admissions. *Id.* at 1133. The relevant part of the case addressed whether the University of California president was an appropriate defendant for purposes of the *Ex parte Young*, 209 U.S. 123 (1908), exception to Eleventh Amendment immunity and was not decided on whether the injury was traceable or redressable by the defendant. *Id.* at 1133–35. It did not involve a scenario like here where the Department of Education has no such policy and the Department of Education gave no guidance to IHLA. *See generally id.*

If anything, the *Coalition* case aids Superintendent Critchfield's argument. In deciding whether *Ex parte Young* applied, the court noted that the University of California president was charged with enforcing the new amendment and was "duty-bound to ensure that his employees followed it." *Id.* at 1134. But Superintendent Critchfield has no power to enforce IHLA's reimbursement policy. Rather, she has a general duty to "carry[] out policies, procedures and duties authorized by law or established by the state board of education for all elementary and secondary school matters." Idaho Code § 33-125. Indeed, "a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *See Coalition*, 674 F.3d at 1134 (citation omitted). This is insufficient to satisfy both the traceability and redressability standing requirements.

## II.  Plaintiffs Have Failed to State a Claim Upon Which Relief May Be Granted.

### A.  Plaintiffs do not have a Free Speech right to select public school curriculum.

Plaintiffs attempt to frame this case as a matter of the government denying a generally available benefit to a "homeschooling family" based only on that family's "faith and their faith-based choices." Dkt. 11 at 5. The facts, as alleged in the Complaint, actually show, however, that this family has made the choice to enroll their children in a public charter school and to use curriculum approved by that public charter school to educate their children. Dkt. 1 ¶¶ 5–6, 24; Dkt. 7-3 at 11–12, 14. It is well-settled that public school curriculum is government speech. *E.g., Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 271 (1988); *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1286 (10th Cir. 2004); *Chiras v. Miller*, 432 F.3d 606, 618 (5th Cir. 2005); *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 340 (6th Cir. 2010); *Nampa Classical Acad. v. Goesling*, 447 F. App'x 776, 778 (9th Cir. 2011). The Ninth Circuit articulated this rule in *Downs v. Los Angeles Unified School District*, 228 F.3d 1003 (9th Cir. 2000). In that case, a teacher argued that he had a free speech right to convey a message of his choice on a school bulletin board. *Id.* at 1005–08. But the court rejected the argument, recognizing that the school bulletin board was an "outlet of a school district's expression" (i.e. government speech). *Id.* at 1015. This conclusion, the court noted, was consistent with its previous holdings that teachers have "no First Amendment right to influence curriculum." *Id.* at 1015–16.

Plaintiffs argue that *Downs* is distinguishable from this case because *Downs* addressed a teacher's free speech rights, not parents' rights. Dkt. 11 at 16. But this is not so. In *Nampa Classical Academy v. Goesling*, parents argued that they had a Free Speech right to influence public charter school curriculum. 447 F. App'x at 778. However, the Ninth Circuit rejected that

argument, noting that its decision logically followed *Downs*. *Id.*; *see also Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 728 (9th Cir. 2022) (indicating school curriculum is government speech).

Plaintiffs also argue that *Goesling* is distinguishable because the charter school in *Goesling* provided in-person classroom instruction. Dkt. 11 at 16. But the Ninth Circuit's analysis did not turn on in-person instruction, *id.*, and the district court's analysis turned on whether the charter school was organized under state law and accepted public funds. *See Nampa Classical Acad. v. Goesling*, 714 F. Supp. 2d 1079, 1093 (D. Idaho 2010), aff'd, 447 F. App'x 776 (9th Cir. 2011). Like the charter school in *Goesling*, IHLA is a publicly funded charter school organized under Idaho law and subject to the same curriculum standards as other Idaho charter schools. Dkt 7-2 ¶ 3; *see* Idaho Code § 33-5205B.

Recent federal decisions further undermine Plaintiffs' attempt to distinguish *Goesling*. In *Woolard v. Thurmond*, parents argued that they had a Free Speech right to influence charter school curriculum. No. 2:23-CV-02305-JAM-JDP, 2024 WL 3010899, at *5 (E.D. Cal. June 10, 2024). The charter school-defendants provided services for "homeschool children." *Id.* at *3. Relying on *Downs* and *Goesling*, the court found that the parents had no Free Speech right to mandate school curriculum. *Id.* at *5. Thus, for Free Speech purposes, there is no difference between in-class instruction and at-home instruction through enrollment in a public charter school—the curriculum provided by public charter schools constitutes government speech and parents have no Free Speech right to mandate that public charter schools provide their preferred curriculum.

Finally, Plaintiffs argue that "programs like IHLA's that are designed to provide educational choice to families do not violate the Establishment Clause," Dkt. 11 at 16, and that "[i]f all speech indirectly funded by the government were considered government speech, then *Zelman*, *Carson*, and *Rosenberger* would have an Establishment Clause problem." *Id.* at 17. Superintendent Critchfield agrees that IHLA's program comports with all constitutional requirements and does not violate the Establishment Clause. But Plaintiffs' suggestion that the Establishment Clause somehow strips the government of its own speech rights and requires the government to provide a parent's preferred religious curriculum is at odds with virtually all caselaw. The Establishment Clause does not mandate that the government must provide public funds to religion, it "demands religious neutrality—government may not exercise a preference for one religious faith over another." *Van Orden v. Perry*, 545 U.S. 677, 709 (2005).

At bottom, public school curriculum is government speech, and parents have no right to mandate public school curriculum. Plaintiffs have the choice to decide whether to enroll their children in a public school or to choose another educational option. But, by choosing to enroll their children in a public school, Plaintiffs have chosen to accept the fact that the public school has the right and obligation to determine the appropriate curriculum to use. Accordingly, this Court should dismiss Plaintiffs' Free Speech claims with prejudice.

**B. Free Exercise Clause does not confer a parental right to require public schools to provide religious school materials**

Plaintiffs argue that *Goesling* was overruled by *Carson* and that *Woolard* incorrectly applied *Carson*. Dkt. 11 at 12–14. But Plaintiffs misunderstand *Carson*.

In *Carson*, Maine excluded religious schools from participating in a state tuition assistance program. *Carson as next friend of O. C. v. Makin,* 596 U.S. 767, 775 (2022). The Court held that because the tuition assistance program excluded schools based on religious status, the program violated Free Exercise. *Id.* at 789. But the Court noted that Maine was nevertheless free to "provide a strictly secular education in its public schools," so long as schools were not excluded from a public benefits program based on religious status. *Id.* at 785.

Consistent with *Carson*, *Woolard* found that a public charter school's policy requiring all curriculum to be nonsectarian did not violate the Free Exercise clause. 2024 WL 3010899 at *3, *5. *Woolard* reasoned that while *Carson* prohibits the government from excluding religious entities based on religious status, nothing in *Carson*, or any Supreme Court precedent, requires the government to provide religious curriculum. *Id.* at *5. Rather, *Woolard* recognized, "states are allowed to provide a strictly secular education in its public schools."[1] *Id.*

Here, IHLA's reimbursement policy does not exclude religious entities from participating in charter school programs. Instead, it reflects a public school's decision to provide a purely secular education. As "[t]he facts in this case plainly do not implicate Plaintiffs' First Amendment rights," this Court should dismiss Plaintiffs' Free Exercise claims with prejudice. *Id.* at *6.

---

[1] *Goesling* similarly held that parents have no Free Exercise right to require charter schools to provide a sectarian education. 447 F. App'x at 778 .

## CONCLUSION

For the forgoing reasons, the Court should dismiss Plaintiffs claims with prejudice, or in the alternative, should dismiss the complaint as to Superintendent Critchfield for lack of subject matter jurisdiction.

DATED: June 12, 2025

                              STATE OF IDAHO
                              OFFICE OF THE ATTORNEY GENERAL

                              /s/ *Gader Wren*
                              GADER WREN
                              Deputy Attorney General

                              *Attorney for Defendant Debbie Critchfield*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on June 12, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which caused the following parties to be notified:

Katherine I. Hartley
khartley@pji.org

*Attorney for Plaintiffs*

/s/ *Gader Wren*
GADER WREN