UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHRIS and NICOLE TRAKEL, on their own behalf and on behalf of their minor children, A.T. and D.T., <br><br> Plaintiffs, <br><br> v. <br><br> DEBBIE CRITCHFIELD, in her official capacity as Superintendent of Public Instruction; IDAHO HOME LEARNING ACADEMY, an Idaho public charter school, <br><br> Defendants. | Case No. 1:25-cv-00115-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Before the Court is Defendant Debbie Critchfield's Motion to Dismiss Under Rule 12(b)(1) and 12(b)(6) (Dkt. 7). Superintendent Critchfield argues that Plaintiffs lack standing for their claims against her and have failed to state a viable First Amendment claim. For the reasons explained below, the Court concludes that jurisdiction is proper, but Plaintiffs have failed to state a plausible claim for relief. The Court will dismiss the complaint without leave to amend.

# BACKGROUND

Plaintiffs Chris and Nicole Trakel filed this lawsuit against the Idaho Home

Learning Academy (IHLA) and Debbie Critchfield, Idaho's Superintendent of Public Instruction, to challenge IHLA's refusal to reimburse them for a religious curriculum. The following facts are taken from their Complaint and the IHLA Student Handbook (Dkt. 7-3).

IHLA is an accredited public charter school that provides Idaho students with a customizable online education. The school offers its own online curriculum options but also reimburses families for the costs of certain self-selected supplemental and enrichment materials. Some of these items are "preapproved," while others require IHLA to first determine that the items are educationally appropriate, reasonable, and an efficient use of tax dollars. Dkt. 7-3 at 13.

Mr. and Mrs. Trakel have two children enrolled at IHLA. The Trakels are Christian, and they want their children to receive an education that aligns with their sincerely held religious beliefs. They purchased religiously influenced supplemental materials for their children—for instance, a handwriting curriculum that used Bible verses—and sought reimbursement from IHLA. The school denied the reimbursement request, citing State Department of Education policies and Article IX, Section 5 of the Idaho Constitution, known as the Blaine Amendment,

which prohibits the use of public money for religious purposes.[1]

The Trakels argue this denial violates the Free Exercise and Free Speech Clauses of the First Amendment. Specifically, they view IHLA's reimbursement policy as a public benefit, which is unconstitutionally limited to secular curriculums. Superintendent Critchfield now moves to dismiss the claims against her for lack of jurisdiction and failure to state a claim.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the court's subject-matter jurisdiction over a claim. A jurisdictional attack may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack asserts that allegations fail on their face to invoke federal jurisdiction, while a factual attack disputes the truth of the allegations. *Id.* To resolve a factual challenge, the court "may look beyond the pleadings to the parties' evidence without converting the motion to dismiss into one for summary judgment." *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016). Genuine factual disputes must

---

[1] In full, the provision states "Neither the legislature nor any county, city, town, township, school district, or other public corporation, shall ever make any appropriation, or pay from any public fund or moneys whatever, anything in aid of any church or sectarian or religious society, or for any sectarian or religious purpose, or to help support or sustain any school, academy, seminary, college, university or other literary or scientific institution, controlled by any church, sectarian or religious denomination whatsoever; nor shall any grant or donation of land, money or other personal property ever be made by the state, or any such public corporation, to any church or for any sectarian or religious purpose." Idaho Const., article IX, § 5.

**MEMORANDUM DECISION AND ORDER - 3**

be resolved in favor of the plaintiff, but the court need not presume the truthfulness of the plaintiff's allegations. *Id.*

Rule 12(b)(6), on the other hand, concerns the substantive quality of the pleading. To survive dismissal, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 570. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557. When assessing the plausibility of a plaintiff's claim, a court must accept as true all factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).

## ANALYSIS

1. **Jurisdiction**

Superintendent Critchfield first argues that that the Court lacks jurisdiction over the claims against her because the Trackels' injuries are not traceable to her conduct, and a judgment against her would fail to redress the injuries. In other words, she says that she is the wrong person to sue.

Standing doctrine stems from the principle that the federal judiciary may hear only "actual cases or controversies." *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976). The party invoking federal jurisdiction has the burden of establishing the three elements of standing: "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (cleaned up).

The parties dispute Superintendent Critchfield's role in the denial of the Trakels' reimbursement request. By statute, Superintendent Critchfield serves as the head of the State Department of Education and is responsible for "carrying out policies, procedures and duties authorized by law or established by the state board of education for all elementary and secondary school matters." Idaho Code § 33-125. But, according to her unrebutted affidavit, the Department does not have a policy on curriculum reimbursement and never advised IHLA about the applicability of the Blaine Amendment, meaning that she is not responsible for the injury to the Trakels. Critchfield Decl. ¶¶ 4, 6, Dkt. 7-2. Further, she says, the Department lacks authority to impose a state-wide reimbursement policy, so a judgment against her would not redress the injury. *Id.* ¶ 5.

Although the Trakels have not rebutted Superintendent Crichfield's specific factual allegations, the Court finds that jurisdiction is proper. The existence of a

curriculum reimbursement policy is beside the point here, nor does it matter that the Department never advised IHLA on the Trackels' specific request. "An injury is fairly traceable to a challenged action as long as the links in the proffered chain of causation are not hypothetical or tenuous and remain plausible." *Matsumoto v. Labrador*, 122 F.4th 787, 799 (9th Cir. 2024). Here, the Idaho laws on charter school governance articulate a clear causal chain.

IHLA is a public charter school authorized by the Oneida School District and "under the general supervision of the state board of education." Idaho Code § 33-5210(1). The Oneida School District must monitor, among other things, IHLA's legal compliance. *See id.* § 33-5205B(4). Both the School District and the State Board of Education are subject to the Blaine Amendment—and even if the Board lacks an official reimbursement policy, it still has a duty to ensure that schools under its authority do not violate the law. *See id.* § 33-101 (creating state board of education "for the general supervision, governance, and control of the public school systems"). Finally, Superintendent Critchfield is responsible for carrying out the duties of the Board. *See id.* § 33-125. These interlocking statutes make clear that there is a plausible and non-hypothetical connection between Superintendent Critchfield's role executing the Board's responsibilities—including the supervision of charter schools like IHLA—and the Trakels' alleged injury. Other individuals and entities are undoubtedly implicated in the causal chain as

well, but the Trakels' failure to name all possible defendants does not undermine their standing to sue Superintendent Crichfield.

Moreover, the Superintendent of Public Education is often a defendant in lawsuits like this. For example, in *Nampa Classical Academy v. Goesling*, 714 F. Supp. 2d 1079 (D. Idaho 2010), plaintiffs challenged a policy adopted by the Idaho Public Charter School Commission—an entity under the State Board of Education—that prohibited the use of religious texts in public schools. The defendants included the Superintendent of Public Education, and neither the defendants nor the Court raised concerns about standing for that claim. *See id.* at 1085. Likewise, in *Woolard v. Thurmond*, No. 2:23-cv-02305, 2024 WL 3010899 (E.D. Cal. June 10, 2024), which concerned a similar reimbursement denial by a California charter school, California's Superintendent of Public Instruction was the lead defendant. Although neither case analyzed the standing issue, the fact that they both took it for granted further supports this Court's jurisdiction.

2. **Failure to State a Claim**

The Trakel's legal claims, however, fare less well. Their theory hinges on the proposition that IHLA's curriculum reimbursement policy is a public benefit, from which they were disqualified based solely on the religious character of the curriculum they chose. This, they say, violates the Free Exercise and Free Speech Clauses of the First Amendment. But the Trakels fundamentally misinterpret the

reimbursement policy. IHLA is a public school, not a government grant program. Nothing in the First Amendment allows parents to dictate the contents of school curriculums or requires state schools to provide students with a religious education.

The Free Exercise Clause protects against not only "outright prohibitions" on the free exercise of religion, but also "indirect coercion or penalties." *Lyng v. Northwest Indian Cemetery Protective Assn.*, 485 U.S. 439, 450 (1988). Thus, "a State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits." *Carson v. Makin*, 596 U.S. 767, 778 (2022). This principle extends to religious organizations seeking state funding. For example, in *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017), the Supreme Court considered a Missouri program that provided grants for playground resurfacing to qualifying secular nonprofits but not to religious nonprofits. This exclusion violated the Free Exercise Clause because the program "expressly discriminated against otherwise eligible recipients by disqualifying them from a public benefit solely because of their religious character." *Id.* at 462. Likewise, in *Espinoza v. Montana Department of Revenue*, 591 U.S. 464 (2020), the Court held that Montana could not bar religious schools from a state-funded scholarship program otherwise open to nearly all private schools.

*Carson v. Makin*, 596 U.S. 767 (2022), offers the clearest articulation of free exercise protections in this context. That case involved a Maine program that

MEMORANDUM DECISION AND ORDER - 8

helped pay private school tuition for families living in school districts without a public secondary school. *Id.* at 773-75. The program excluded religious schools, and the Court held that this limitation unconstitutionally discriminated against religion. The tuition assistance payments, the Court explained, were "a neutral benefit program in which public funds flow to religious organizations through the independent choices of private benefit recipients." *Id.* at 781. Although Maine was of course free to "provide a strictly secular education in its public schools," it could not exclude private schools from the tuition assistance program simply on the basis of their religious affiliation. *Id.* at 785.

In the present case, on the other hand, the Trakels seek to compel IHLA to provide a religious education. IHLA's reimbursement policy is not a public benefit that allows parents to make fully independent decisions regarding their children's education. Although families have an unusual degree of input and flexibility, IHLA is ultimately a public school that sets its own curriculum. To qualify for reimbursement, supplemental materials must receive approval and meet a variety of standards set by the school. *See* Dkt. 7-3 at 13. To put it simply, reimbursed materials become part of the IHLA curriculum. The question, then, is whether the Trakels have a free exercise or free speech right for their children to receive a public religious education. The answer is clearly no.

The Free Exercise Clause does not "require the Government itself to behave

**MEMORANDUM DECISION AND ORDER - 9**

in ways that the individual believes will further his or her spiritual development or that of his or her family." *Bowen v. Roy*, 476 U.S. 693, 699 (1986). And the Free Speech Clause "does not regulate government speech." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009). Because the Trackels seek to compel IHLA to include religious material in the curriculum—a form of expressive conduct by the government—their own First Amendment rights are not implicated.

This Court addressed analogous issues in *Goesling*, where plaintiffs challenged an Idaho policy prohibiting the use of religious texts in classrooms. 714 F. Supp. 2d at 1084-86. The Court explained:

> The First Amendment allows a speaker to control the content of their speech and protects an individual's right to practice whatever religion they may choose. These rights, however, are not implicated under the circumstances of this case. Nor does the Defendants' conduct infringe upon these rights. The speakers here are not the Plaintiffs. In setting the public school curriculum, the Defendants are the speakers. As such, the Defendants have the right to lawfully control the content of their speech.

*Id.* at 1093. A sister district court reached the same conclusion more recently in *Woolard*, where the plaintiffs brought a lawsuit virtually identical to the Trackels'. 2024 WL 3010899 at *3-4. There, parents of children at a public charter school's "Home School Academy" sought reimbursement for a faith-based curriculum that they wished to use for independent study. *Id.* The court dismissed the complaint with prejudice because "failing to provide requested religious curriculum is not an infringement on Plaintiffs' freedom of exercise," and "a public school's curriculum

MEMORANDUM DECISION AND ORDER - 10

is a form of government speech, not speech of a teacher, parent, or student." *Id.* at *5. In short, parents have a First Amendment right to provide their children with a religious education, but not to force the state to provide that education.

The Supreme Court's recent decision in *Mahmoud v. Taylor*, No. 24-297, slip op (U.S. June 27, 2025), does not change the analysis. That case concerned a Maryland school district's decision to forbid parental notifications and opt-outs when LGBTQ+ books were taught in elementary school classes. *Id.* at 9-11. The Court found that this impermissibly burdened religious exercise, emphasizing the importance of "limits on the government's ability to interfere with a student's religious upbringing in a public school setting." *Id.* at 19. This reasoning is inapplicable here because the Trakels are not trying to exempt their children from lessons that offend their faith. In *Mahmoud*, the parents did not seek "the right to micromanage the public school curriculum, but rather to have their children opt out of a particular educational requirement." *Id.* at 40. The Trakels' lawsuit presents the opposite situation. Rather than seeking an exemption from objectionable content, they demand that a public school curriculum conform to their own religious beliefs.

As the Supreme Court has repeatedly observed, the Free Exercise Clause and the Establishment Clause can stand at some tension. *E.g.*, *Locke v. Davey*, 540 U.S. 712, 718 (2004). "[T]here is room for play in the joints between them," and

"it may be difficult to determine in any particular case whether the Free Exercise Clause requires a State to fund the activities of a religious institution, or whether the Establishment Clause prohibits the State from doing so." *Carson*, 596 U.S. at 792 (Breyer, J., dissenting). The present case, however, is not difficult. The Trakels do not wish to direct a generally available benefit to a religious institution, or to opt their children out of a portion of a curriculum that offends their sincere religious beliefs. They argue, instead, that an Idaho public school should be required to provide their children with the religious instruction of their choice. This is far outside the scope of the First Amendment's protections.

## ORDER

THEREFORE, IT IS HEREBY ORDERED that Defendant Debbie Critchfield's Motion to Dismiss Under Rule 12(b)(1) and 12(b)(6) (Dkt. 7) is **GRANTED**. Plaintiffs' claims against Defendant Critchfield are **DISMISSED WITH PREJUDICE** due to failure to state a claim.



DATED: August 6, 2025

_____
B. Lynn Winmill
U.S. District Court Judge